UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| MARTA ALICIA HUERTA RODRIGUEZ, <br><br> Plaintiff, <br><br> vs. <br><br> BARRY BRANDENBURGER, <br><br> Defendant. | 4:21-CV-04146-KES <br><br> ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

Plaintiff, Marta Rodriguez, sued Defendant, Barry Brandenburger, for fraud, conversion, breach of fiduciary duty, and unjust enrichment. *See* Docket 12. Barry moves for summary judgment on all counts. *See* Docket 19. Rodriguez opposes the motion in its entirety. *See* Docket 26. For the following reasons, the court grants in part and denies in part Barry's motion for summary judgment.

I. **Factual Background**

Viewing the facts in the light most favorable to Rodriguez, the court recites the following factual background.[1]

---

[1] In Rodriguez's response to Barry's statement of undisputed facts, Rodriguez simply cites entire documents for the court to review without providing specific page numbers. *See, e.g.*, Docket 28 ¶¶ 3,4, 20-22. The court reminds Rodriguez that District of South Dakota Local Rule 56.1 requires opposing parties in their opposition to the moving party's statement of material facts to provide "appropriate citations to the record." Citing entire documents without page reference is not an appropriate citation. *See Friend v. Valley View Cmty. Sch. Dist. 365U*, 789 F.3d 707, 710-11 (7th Cir. 2015) (affirming district court's decision to disregard facts contained in party's statement of additional facts that were not supported by proper citations to the record, such as not citing specific page numbers); *Orr. v. Bank of Am., NT & SA*, 285 F.3d 764, 774-75 (9th Cir. 2002) (noting a party's failure to cite the page and line number when

1

In 2006, Neil Brandenburger married Marta Rodriguez. Docket 21 ¶ 2; Docket 28 ¶ 2. Rodriguez lived in Mexico and Neil lived in South Dakota. Docket 21 ¶¶ 3, 9; Docket 28 ¶¶ 3, 9. The two texted each other daily and Neil travelled to Mexico to visit Rodriguez on several occasions. Docket 21 ¶¶ 3-4; Docket 28 ¶¶ 3-4. Neil had five children with his first wife. Docket 21 ¶ 1; Docket 28 ¶ 1. One of Neil's children was Barry Brandenburger. Docket 21 ¶ 1; Docket 28 ¶ 1. Barry first spoke with Rodriguez over the phone and had limited contact with Rodriguez. *See* Docket 29-7 at 2; *see also* Docket 21 ¶ 6 (stating that none of Neil's children had met Rodriguez); Docket 28 ¶ 6 (objecting only to the relevance of such a claim).

In May 2017, Neil became sick and was eventually diagnosed with cancer. Docket 21 ¶ 8; Docket 28 ¶ 8. Barry moved in with Neil, who normally lived alone, so that Barry could take care of Neil. Docket 21 ¶ 9; Docket 28 ¶ 9.

Neil had a life insurance policy with a $500,000 death benefit. Docket 21 ¶ 13; Docket 28 ¶ 13. Neil first obtained this policy in 2002 and listed Rodriguez and his daughter Deidre as his primary beneficiaries, with Rodriguez getting 80% and Deidre getting 20%. *See* Docket 21 ¶ 14; Docket 28 ¶ 14. The insurance policy allowed Neil to change his beneficiaries during his lifespan. *See* Docket 22-6 at 1*; see also* Docket 23-2; Docket 23-3. In 2009, Neil

---

referring to a deposition "alone warrants exclusion of the evidence"). Although the court could exercise its discretion in throwing out Pamela Steen's entire deposition because Rodriguez failed to cite any page numbers when citing the deposition, Barry did not raise the issue and thus the court declines to do so. But the court orders Rodriguez in future proceedings in this litigation to more appropriately and specifically cite facts in the record.

exercised this right and made Rodriguez the sole beneficiary of his life insurance. *See* Docket 21 ¶ 15; Docket 28 ¶ 15. Neil began to have conversations about his life insurance benefits in May or June of 2017. *See* Docket 21 ¶ 16; Docket 28 ¶ 16. Pamela Steen, another one of Neil's daughters, testified in her deposition that at one point when talking with Neil, Neil proposed designating Rodriguez as the beneficiary of $200,000 of the life insurance proceeds. *See* Docket 29-1 at 23; Docket 21 ¶ 1; Docket 28 ¶ 1. On July 19, 2017, Neil amended his life insurance beneficiary form again and made Barry the sole beneficiary. *See* Docket 23 ¶ 10; Docket 21 ¶ 23; Docket 28 ¶ 23. Neil died in December 2017. Docket 21 ¶ 24; Docket 28 ¶ 24. Barry received $500,000 in accordance with Neil's life insurance beneficiary designation. *See* Docket 29-1 at 28.

Immediately following Neil's death, Pamela and her other siblings "didn't know" who was/were the beneficiary(ies) of Neil's life insurance policy. *See* Docket 29-1 at 25. When Pamela called the life insurance company to inquire about Neil's life insurance policy, the life insurance company would not speak with her because she was not a beneficiary. *See id.* Pamela noticed that Barry spoke with the life insurance company, and so Pamela said to Barry, "Okay, so you must have been the beneficiary." *Id.* Barry replied, "Yes I was one of them." *Id.* Barry then said that "he got 300,000." *Id.* at 25-26. Barry gave Pamela and her other siblings each $60,000 because Barry said that "Dad wanted me to

share it with you guys." *See* Docket 29-1 at 28.  Barry kept the remaining $200,000. *See id.*[2]

## II.  Legal Standard

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *Morrow v. United States*, 47 F.4th 700, 704 (8th Cir. 2022) (alteration in original) (quoting *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995)). In reviewing the record, the court views the facts in the light most favorable to the non-moving party. *Lissick v. Andersen Corp.*, 996 F.3d 876, 882 (8th Cir. 2021). While "[t]he mere existence of a scintilla of

---

[2] In opposing summary judgment, Rodriguez submitted what appears to be screenshots of text messages in Spanish puportedly from Neil Brandenburger. Docket 29 ¶ 2; Docket 29-3. There is a note below the text messages that says, "GOOGLE TRANSLATE" and then a purported English translation of the above messages. *Id.* at 3. The court declines to consider these messages because foreign-language documents are only admissible into evidence if they are accompanied by certified translations. *See In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011) ("[W]e require district courts to rely only on admissible evidence at the summary judgment stage."); *Estades-Negroni v. Assocs. Corp. of N. Am.*, 359 F.3d 1, 2 (1st Cir. 2004) ("In collecting a record for summary judgment a district court must sift out non-English materials, and parties should submit only English-language materials."); *Heredia v. Americare, Inc.*, 2020 WL 3961618, at *5 (S.D.N.Y. July 13, 2020) (refusing to consider exhibits written in Spanish for purposes of summary judgment and collecting cases). A certified translation requires an individual who can certify the accuracy and truthfulness of the translation.

4

evidence in support of the [movant's] position will be insufficient[,]" *Turner v. XTO Energy, Inc.*, 989 F.3d 625, 627 (8th Cir. 2021), a party moving for summary judgment is not entitled to summary judgment just because the facts he offers may appear to be more plausible or because the adversary may be unlikely to prevail at trial, *see Handeen v. Lemaire*, 112 F.3d 1339, 1354 (8th Cir. 1997).

### III. Applicable Law

Federal courts sitting in diversity apply the substantive law of the forum state. *See Chew v. Am. Greetings Corp.*, 754 F.3d 632, 635 (8th Cir. 2014). In doing so, federal courts must follow the decisions of the state's supreme court interpreting the forum's law. *See C.S. McCrossan Inc. v. Fed. Ins. Co.*, 932 F.3d 1142, 1145 (8th Cir. 2019). But if a state's supreme court "has not spoken on an issue, [federal courts] must predict how it would decide the issue[,]" and "may consider relevant state precedent, analogous decisions, considered dicta . . . and any other reliable data." *Olmsted Med. Ctr. v. Cont'l Cas. Co.*, 65 F.4th 1005, 1008 (8th Cir. 2023) (quoting *Brill ex rel. Brill v. Mid-Century Ins. Co.*, 965 F.3d 656, 659 (8th Cir. 2020)). Here, the court is sitting in diversity and thus South Dakota substantive law applies. *See* Docket 1.

### IV. Fraud

Under South Dakota law, common law fraud requires proof of three elements:

> First, the representation at issue must be 'made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made.' Second, the representation

5

must have been 'made with intent to deceive and for the purpose of inducing the other party to act upon it.' Third, the person to whom the representation was made must demonstrate 'that he did in fact rely on it and was induced thereby to act to his injury or damage.'

*Johnson v. Markve*, 980 N.W.2d 662, 677 (S.D. 2022) (cleaned up) (quoting *Aqreva, LLC v. Eide Bailly, LLP*, 950 N.W.2d 774, 791 (S.D. 2020)). To satisfy the third element, the plaintiff must show that she relied on the alleged misrepresentation and took some action based on that reliance. *See Estate of Johnson ex rel. Johnson v. Weber*, 898 N.W.2d 718, 731 (S.D. 2017).

Rule 9(b) of the Federal Rules of Civil Procedure requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake." Complaints subject to Rule 9(b) "must identify who, what, where, when, and how." *United States ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 822 (8th Cir. 2009) (quoting *United States ex rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003)). The complaint must also "specify[] 'the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result.' " *Id.* (quoting *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556-57 (8th Cir. 2006)) Similarly, "[p]arties alleging fraud must plead reliance with 'sufficient particularity to state a plausible claim of justifiable reliance.' " *Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*, 949 F.3d 417, 423 (8th Cir. 2020)

(quoting *OmegaGenesis Corp. v. Mayo Found. for Med. Educ. & Rsch*, 851 F.3d 800, 805 (8th Cir. 2017)).

Here, Barry alleged in his amended answer that Rodriguez failed to comply with Rule 9(b)'s requirements, and now reasserts that argument in moving for summary judgment. *See* Docket 14 ¶ 15; Docket 20 at 6-7. The court agrees: Rodriguez failed to plead with sufficient particularity the circumstances constituting fraud as required under Rule 9(b). In her amended complaint, Rodriguez alleges that Barry promised to Neil that Barry would give Rodriguez $200,000 of the life insurance proceeds and divide the remaining $300,000 between Barry and his four siblings. *See* Docket 12 ¶ 3. Crucially, Rodriguez alleges only that *Neil Brandenburger*, rather than Rodriguez herself, relied on Barry's promise that Barry would divide the proceeds that way, and that *Neil Brandenburger* changed the life insurance beneficiary from the plaintiff to Barry. *See id.* Rodriguez does not allege any facts to suggest that Rodriguez herself relied on any promises that Barry made either to herself or to Neil. Similarly, Rodriguez does not allege any steps or actions she took while relying on any alleged promises made by Barry. As a result, Rodriguez failed to meet Rule 9(b)'s requirements. *See Ambassador Press*, 949 at 423. And Rodriguez's failure to meet the pleading standard under Rule 9(b) justifies dismissal of Count I of Rodriguez's amended complaint. *See Thayer v. Planned Parenthood of the Heartland, Inc.*, 11 F.4th 934, 939 (8th Cir. 2021) (affirming district court's grant of summary judgment when complaint failed to comply with Rule 9(b)); *see also Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.*, 48

F.3d 1066, 1070 (8th Cir. 1995) ("A district court may enter summary judgment dismissing a complaint alleging fraud if the complaint fails to satisfy the requirements of Rule 9(b).").

But even if Rodriguez met the pleading standard under Rule 9(b), she has not identified any evidence to show that she relied on any promises Barry made to her. *See* Docket 27 at 5-6. Instead, Rodriguez simply states in her brief opposing summary judgment that she "reli[ed] upon [Barry]'s commitment to receive the insurance proceeds in trust, and to pay [her] the sum of $200,000 and $60,000 to the children of Neil Brandenburger." *Id* at 5. "[B]ut to demonstrate a genuine dispute of material fact, the nonmovant must produce more than a mere scintilla of evidence in support of his position." *In re Paul*, 739 F.3d 1132, 1135 (8th Cir. 2014) (quotations omitted). Because Rodriguez has failed to submit any evidence that Rodriguez relied on any promises Barry made to her, the record contains no genuine dispute over an essential element of fraud. *See Estate of Johnson*, 898 N.W.2d at 731. Thus, the court also grants summary judgment in favor of Barry on this count.³

---

³ In Rodriguez's response in opposition to Barry's motion for summary judgment, Rodriguez also argues the defendant engaged in constructive fraud. *See* Docket 27 at 6. But under South Dakota law, "[c]onstructive fraud will support an action to avoid a contract, but not a tort action for damages." *Harding County v. Frithiof*, 575 F.3d 767, 774 (8th Cir. 2009) (citing *Schmidt v. Wildcat Cave, Inc.*, 261 N.W.2d 114, 117 (S.D. 1977)). Thus, even assuming Rodriguez properly pleaded this claim, it fails as a matter of law and does not save her fraud claim.

**V.     Conversion**

"Conversion is the act of exercising control or dominion over personal property in a manner that repudiates the owner's right in the property or in a manner that is inconsistent with such right." *Wyman v. Terry Schulte Chevrolet, Inc.*, 584 N.W.2d 103, 107 (S.D. 1998). Under South Dakota law, the plaintiff must prove the following four essential elements:

> (1) [plaintiff] owned or had a possessory interest in the property;
> (2) [plaintiff's] interest in the property was greater than the [defendant's];
> (3) [defendant] exercised dominion or control over or seriously interfered with [plaintiff's] interest in the property; and
> (4) such conduct deprived [plaintiff] of its interest in the property.

*Estate of Thacker v. Timm*, 984 N.W.2d 679, 691-92 (S.D. 2023) (alterations in original).

The key question here is whether Rodriguez can satisfy the first element—that is, whether Rodriguez had a possessory interest in the $200,000 to which she claims she is entitled. The South Dakota Supreme Court first articulated the principles involved in determining entitlement to insurance policy proceeds in *Jacoby v. Jacoby*, 11 N.W.2d 135 (S.D. 1943). In *Jacoby*, a doctor had been married to the plaintiff (the doctor's first wife), later got divorced, and then eventually married the defendant (the doctor's third wife). *See id.* at 434, 436. The doctor entered into a divorce contractual agreement with his first wife, in which the doctor "obligated himself to maintain insurance on his life in the sum of $5,000 for the benefit of the first wife." *Id.* at 436. At the time of the divorce settlement with his first wife, the doctor had in place a

9

policy with a $5,000 death benefit in which he designated his first wife as the sole beneficiary. *Id.* Seven years later, the doctor obtained a second, separate policy that insured his life for $10,000. *Id.* The doctor originally named his second wife as the sole beneficiary, but changed the beneficiary two years later such that the first wife would receive $5,000 and his estate would receive the other $5,000. *See id.* The doctor later changed the $10,000 policy yet again—with the original $5,000 policy still being in force—naming the defendant (third wife) as the sole beneficiary. *See id.* A year later, the doctor surrendered the original $5,000 policy and applied the surrendered value to past-due premiums on the $10,000 policy. *See id.* When the doctor died, the first wife was not named as a beneficiary on any of the doctor's life insurance policies. The first wife claimed an equitable right to $5,000 of the $10,000 policy. *See id.*

In deciding whether the first wife had an equitable interest in $5,000 of the $10,000 policy, the South Dakota Supreme Court observed:

> [T]hough a beneficiary named in a policy which contains a provision reserving a right in the insured to change the beneficiary is without a so-called vested right in the policy, he may nevertheless become invested with equitable rights therein through a separate contract with the insured, and that such rights may prevail over the legal and equitable rights of one who has been subsequently substituted as the named beneficiary. That such an equitable right in the policy may arise from a settlement of property rights in connection with a divorce proceeding is not questioned.

*Id.* at 434 (citations omitted). The court recognized that the first wife had an equitable interest in the existing $5,000 policy because she was the named beneficiary *and* she had a property settlement agreement. *See id.* at 437-38. But with respect to the second $10,000 policy, in which the doctor had at one

10

point named the first wife as a beneficiary, the South Dakota Supreme Court stated, "[w]hen [the doctor] voluntarily provided the first wife with additional protection under a policy which contained a reservation of the right to change the beneficiary, she acquired *no more than a mere expectancy of benefit which he was at liberty to destroy by exercising his unfettered right to change the beneficiary of that policy.*" *Id.* at 437 (emphasis added). The court repeated the general rule that being a named beneficiary alone, prior to the insured's death, does not provide the beneficiary a legal interest in the insurance proceeds. *See id.* at 438. Specifically, it noted:

> [T]wo factors are essential to the creation of such a vested or equitable interest, (1) such an express or implied contract to provide insurance and (2) a naming of the promisee as the beneficiary in a policy. *When these factors concur,* the underlying contract restricts the power reserved in the particular policy to change the beneficiary, and *transforms that which would otherwise amount to an expectancy into a so-called vested right*

*Id.* (emphasis added). Applying those principles, the South Dakota Supreme Court held that the first wife did not have a vested legal interest in $5,000 of the $10,000 policy, because at the time the doctor substituted his first wife for his third wife as the beneficiary of the $10,000 policy, the doctor maintained the original $5,000 for the first wife. *See id.* at 436-37. The court held that although the doctor surrendered the original $5,000 policy and used the proceeds to pay some of the premiums on the $10,000 policy—in an apparent breach of his divorce agreement with the first wife—the first wife "gain[ed] nothing but a cause of action for breach of contract . . . ." *Id.* at 438.  Although the South Dakota Supreme Court decided *Jacoby* in the 1940s, *Jacoby's*

11

central teachings were repeated more recently in *In re Lemer's Estate*, 306 N.W.2d 244, 245-46 (S.D. 1981) and *Bentley v. N.Y. Life Ins. Co.*, 488 N.W.2d 77, 79 (S.D. 1992).

Here, even viewing the facts in the light most favorable to Rodriguez, Rodriguez cannot show that she owned or had a possessory interest in Neil's life insurance proceeds. Although Neil named Rodriguez as the sole beneficiary of his life insurance policy in 2009, Neil amended the named beneficiaries in 2017 and made Barry the sole beneficiary. *See* Docket 23-2; Docket 23-3; Docket 23 ¶ 10. The record reflects, and Rodriguez has not argued otherwise, that Neil had the right to change the beneficiary of his life insurance policy at any time. *See* Docket 22-6 at 1; *see generally* Docket 23-2; Docket 23-3. Unlike the first wife in *Jacoby* who had an equitable interest in the original $5,000 policy because of the divorce settlement agreement, Rodriguez has submitted no evidence of any contract between herself and Neil in which there was a bargained-for exchange such that Neil agreed to include Rodriguez as the beneficiary on any life insurance policy. *See Jacoby*, 11 N.W.2d at 436-37. When Neil named Rodriguez as a beneficiary in 2017, Rodriguez "acquired no more than a mere expectancy of benefit which [Neil] was at liberty to destroy by exercising his unfettered right to change the beneficiary of that policy." *Id.* at 437; *cf.* SDCL § 43-3-6 ("A mere possibility, such as the expectancy of an heir apparent, is not deemed an interest of any kind."). Thus, the mere fact that Neil previously named her as a beneficiary does not alone give her a possessory interest in the life insurance proceeds. *See id.*

Because Rodriguez has failed to show that she has a possessory interest in $200,000 of Neil's life insurance benefits, Rodriguez cannot prove the first element of her conversion claim. *Estate of Thacker*, 984 N.W.2d at 691-92. The court grants Barry's motion for summary judgment on this claim.

## VI.     Breach of Fiduciary Duty

Under South Dakota law, to recover for breach of fiduciary duty, a plaintiff must prove: "(1) that the defendant was acting as plaintiff's fiduciary; (2) that the defendant breached a fiduciary duty to plaintiff; (3) that plaintiff incurred damages; and (4) that the defendant's breach of the fiduciary duty was a cause of plaintiff's damages." *Chem-Age Indus., Inc. v. Glover*, 652 N.W.2d 756, 772 (S.D. 2002). "Fiduciary duties 'arise only when one undertakes to act primarily for another's benefit. The law will imply such duties only where one party to a relationship is unable to fully protect its interests and the unprotected party has placed its trust and confidence in the other.' " *Estate of Thacker*, 984 N.W.2d at 686 (quoting *Ward v. Lange*, 553 N.W.2d 246, 250 (1996)).

> While there is no 'invariable rule' for determining whether a fiduciary relationship exists, 'there must be not only confidence of the one in the other, but there must exist a certain inequality, dependence, weakness of age, mental strength, business intelligence, knowledge of the facts involved, or other conditions giving to one advantage over the other.'

*Wyman v. Bruckner*, 908 N.W.2d 170, 179 (S.D. 2018). Determining whether an individual has a fiduciary duty is a question of law. *See*

13

*Estate of Lynch v. Lynch*, --N.W.2d--, 2023 WL 3518003, at *10 (S.D. May 17, 2023).

Here, by Rodriguez's own admission, "*Neil Brandenburger* had entrusted the Defendant to deliver the Plaintiff the sum of $200,000 from his life insurance proceeds, and the Defendant accepted that position of trust." Docket 27 at 7 (emphasis added). But Rodriguez is not Neil Brandenburger. For Rodriguez to succeed in her breach of fiduciary duty claim, she must show that Barry had a fiduciary duty *to her*. *See Grand State Prop., Inc. v. Woods, Fuller, Shultz, & Smith, P.C.*, 556 N.W.2d 84, 88 (S.D. 1996) ("In order to recover on a claim for breach of fiduciary duty, a plaintiff must prove . . . that the defendant was acting as a fiduciary *of the plaintiff*[.]" (emphasis added)); *Chem-Age Indus.*, 652 N.W.2d at 772 (listing first element of breach of fiduciary duty to be "that the defendant was acting *as plaintiff's fiduciary*" (emphasis added)). Barry has put forth evidence that Rodriguez has very little, if any, relationship with Barry, and Rodriguez has failed to identify anything to dispute such a claim. *See* Docket 21 ¶ 6 (stating that none of Neil's children ha[ve] ever met Rodriguez); Docket 28 ¶ 6 (disputing only the relevance of such a claim); Docket 22-3 at 5 (Rodriguez admitting in an interrogatory that "[o]ne time [Neil] introduced Barry to me on the phone. The last time I had contact with [Barry] was when my husband died. Barry let me know about it."). This distant, one-time phone call is hardly sufficient to establish that Rodriguez placed her trust and confidence in Barry. This one phone call is insufficient to show Barry was a fiduciary to Rodriguez. *See Estate of Thacker*, 984 N.W.2d at 686.

14

The one case Rodriguez cites in her opposition, *Briggs v. Briggs*, 2018 WL 3148386 (D.S.D. June 27, 2018) supports the court's decision here. In *Briggs*, Thomas, a son of Elizabeth, alleged that Judith, a daughter of Elizabeth, owed Thomas a fiduciary duty because he was the beneficiary of Elizabeth's trust prior to Elizabeth disinheriting him. *See id.* at *7. The court recognized that Judith had a fiduciary duty to Elizabeth due to Elizabeth being Judith's caretaker and the two individuals' confidential relationship. *See id.* The court further recognized that Judith owed Thomas a fiduciary duty in her capacity as a trustee, but Thomas sued Judith in her individual capacity alleging that Judith owed Thomas a fiduciary duty to him. *See id.* Because Thomas only sued Judith in her individual capacity, the court found that Judith "did not owe Thomas, an expected beneficiary in the years leading up to Elizabeth's disinheritance of him, the same fiduciary duty that she owed Elizabeth." *Id.* The court specifically noted that Thomas "ha[d] not provided the court with any authority where a person—in her individual capacity—as caretaker for the settlor owes fiduciary duties to another person with facts similar to his claim." *Id.*

Similarly here, Rodriguez is suing Barry in his individual capacity. *See* Docket 1. Just as Thomas did not demonstrate that Judith owed him a fiduciary duty despite being an expected beneficiary and despite Judith having a fiduciary duty to Elizabeth, neither has Rodriguez shown that Barry owed Rodriguez a fiduciary duty. *See Briggs*, 2018 WL 3148386 at *7. Rodriguez has pointed to no authority that imposes a fiduciary duty on Barry to Rodriguez in

15

the context of life insurance proceeds. The court finds that as a matter of law, Rodriguez has not shown that Barry had a fiduciary duty towards Rodriguez, and thus grants Barry's motion for summary judgment on Rodriguez's breach of fiduciary duty claim.

### VII.   Unjust Enrichment

Barry lastly moves for summary judgment on Rodriguez's unjust enrichment claim. *See* Docket 20 at 13-15. Unjust enrichment is an equitable remedy in which the court has discretion to grant or deny. *See Hofeldt v. Mehling*, 658 N.W.2d 783, 789 (S.D. 2003). The parties have not cited, and the court is unaware of any South Dakota Supreme Court cases that have dealt with unjust enrichment in the context of an individual once named as a beneficiary claiming that another wrongfully interfered with a donor's intent. But the Restatement of Restitution and Unjust Enrichment, a source that the South Dakota Supreme Court has consulted in other cases, does directly address such a situation. *See* Restatement (Third) of Restitution and Unjust Enrichment § 46 (2011); *Dowling Fam. P'ship v. Medland Farms*, 865 N.W.2d 854, 860 (S.D. 2015); *Hofeldt*, 658 N.W.2d at 788 (quoting a previous version of the Restatement of Restitution for principles of unjust enrichment). The Restatement provides:

> (1) If assets that would otherwise have passed by donative transfer to the claimant are diverted to another recipient by fraud, duress, undue influence, or other intentional misconduct, the recipient is liable to the claimant for unjust enrichment. The misconduct that invalidates the transfer to the recipient may be the act of the recipient or of a third person.

16

> (2) The rule of this section applies to donative transfers in any form, whether by inter vivos gift, by survivorship, by will or inheritance, or by designation of a beneficial interest in trust property, insurance proceeds, retirement funds, or similar assets.

Restatement (Third) of Restitution and Unjust Enrichment § 46 (2011). The court predicts the South Dakota Supreme Court would adopt the principles stated in this Restatement.

Here, viewing the facts in the light most favorable to Rodriguez, the record contains a genuine dispute over whether Barry diverted Neil's life insurance proceeds to himself and from Rodriguez by fraud, undue influence, or other intentional misconduct. When Neil first acquired a life insurance policy in 2002, Neil named Rodriguez as the primary beneficiary to receive 80% of the benefits. *See* Docket 21 ¶ 14; Docket 28 ¶ 14. In 2009, Neil amended his beneficiary designation and made Rodriguez the sole beneficiary of the life insurance policy. *See* Docket 21 ¶ 15; Docket 28 ¶ 15. Around this time period, Neil and Rodriguez texted each other daily and Neil visited Rodriguez in Mexico on several occasions. *See* Docket 21 ¶¶ 3-4; Docket 28 ¶¶ 3-4.

In May 2017, Neil became sick and was eventually diagnosed with cancer. *See* Docket 21 ¶ 8; Docket 28 ¶ 8. Although Neil normally lived alone, Barry moved in with Neil in June 2017 to help care for Barry. *See* Docket 21 ¶ 9; Docket 28 ¶ 9. On July 19, 2017, just two months after becoming ill and being diagnosed with cancer, and just one month after Barry moved in with Neil, Neil amended his life insurance policy and named Barry as the sole

17

beneficiary and omitted Rodriguez as a beneficiary. *See* Docket 23 ¶ 10; Docket 21 ¶¶ 8, 23-24; Docket 28 ¶¶ 8, 23-24.

Neil had conversations with his children about his life insurance policy starting in May or June of 2017. Docket 21 ¶ 16; Docket 28 ¶ 16. Pamela, one of Barry's daughters, testified in her deposition that she and her other siblings "didn't know" who was/were the beneficiary(ies) of Barry's life insurance policy. *See* Docket 29-1 at 25; Docket 21 ¶ 1; Docket 28 ¶ 1. It was not until Pamela attempted to call the life insurance company that she realized that Barry was a beneficiary. *See* Docket 29-1 at 25. When Pamela said to Barry, "Okay, so you must have been the beneficiary[,]" Barry replied, "Yes I was one of them." *Id.* He then said that "he got 300,000." *Id.* at 25-26. But Barry actually received more than just $300,000: he received $500,000. *Id.* at 26. Although Barry gave Pamela and her other siblings each $60,000 because Barry said that "Dad wanted me to share it with you guys[,]" Barry kept the remaining $200,000. *See id.* at 28. According to Pamela, Neil had proposed leaving the remaining $200,000 to Rodriguez, not to Barry. *See* Docket 29-1 at 22. Barry denies that Neil told him to give the $200,000 to Rodriguez, and instead claims that Neil instructed Barry to distribute the $300,000 to Barry's siblings, mother, and uncle, and to retain the remaining $200,000. *See* Docket 23 ¶ 11.

These facts, viewed in the light most favorable to Rodriguez, are sufficient for a factfinder to reasonably find that Neil cared about Rodriguez enough to name her as a beneficiary of his life insurance for nearly two decades and that Neil would not have taken her off without Barry's undue influence. A factfinder

18

could reasonably conclude that Barry had sole access to his vulnerable and very ill father and took advantage of Neil or deceived Neil into changing the life insurance beneficiary on Neil's policy. A factfinder could reasonably find that Barry intentionally interfered with Neil's donative intent to have Rodriguez be a beneficiary of at least some of Neil's life insurance, as required under Rodriguez's unjust enrichment theory. *See* Restatement (Third) of Restitution and Unjust Enrichment § 46 (2011).

Whether Barry acted with misconduct toward Neil or how Barry did so is genuinely disputed. Barry argues that "there are many possible reasons that Neil changed his beneficiary designation, including Barry's care for Neil and Rodriguez's failure or refusal to visit Neil." *See* Docket 32 at 8. But that is not for the court to decide at this stage in the proceedings. Rather, the court must view the facts in the light most favorable to Rodriguez. Because the record shows a genuine dispute over why Neil changed his beneficiary designation in July 2017, and relatedly whether Barry acted inequitably and with misconduct, the court denies summary judgment on Rodriguez's unjust enrichment claim.[4]

For the above reasons, it is ORDERED:

---

[4] Barry also cites Neil's will, which provides that Rodriguez should receive his red 2017 Ford F150 and his residuary estate only if she is present at the time of his death and if she had legal status in the United States. *See* Docket 20 at 15; Docket 22-1 at 1. Barry argues Neil's will reflects Neil's "probable change of heart" in deciding to remove Rodriguez as a beneficiary. *See* Docket 20 at 15. But this argument is more appropriate for the factfinder at trial rather than the court on summary judgment because, for the reasons explained above, Rodriguez has shown sufficient facts in the record to support her unjust enrichment claim.

(1) That defendant's motion for summary judgment is GRANTED in part and DENIED in part;

(2) That defendant's motion for summary judgment on Count 1 (Fraud) is GRANTED;

(3) That defendant's motion for summary judgment on Count II (Conversion) is GRANTED;

(4) That defendant's motion for summary judgment on Count III (Breach of Fiduciary Duty) is GRANTED; and

(5) That defendant's motion for summary judgment on Count IV (Unjust Enrichment) is DENIED;

Dated August 3, 2023.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE
